Justin E. Sterling, State Bar No. 249491
LAW OFFICES OF JUSTIN STERLING
Justin@SterlingDefense.com
15760 Ventura Blvd. Suite 700
Encino, CA 91436
Tel. (818) 995-9452/Fax. (818) 824-3533

Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff Ariana Amore

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIANA AMORE,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES COUNTY PROBATION DEPARTMENT, LOS ANGELES COUNTY CHIEF PROBATION OFFICER JERRY POWERS, DEPUTY PROBATION OFFICER OSCAR CALDERON, JR., DEPUTY PROBATION OFFICER FNU IBANEZ, DEPUTY PROBATION OFFICER FNU GONZALEZ, SUPERVISING DEPUTY PROBATION OFFICER FNU CODDINGTON, and DOES 1 TO 10,<br><br>Defendants. | Case No. 2:17-CV-5207-JAK<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     While employed by the County of Los Angeles as a juvenile probation officer, defendant Deputy Probation Officer Oscar Calderon Jr. molested or sexually abused multiple wards at Camp Scudder, a juvenile detention facility in Los Angeles County. Plaintiff Ariana Amore is one of Officer Calderon's victims.

1

2.     From around April 2015 through June 2015, Officer Calderon sexually assaulted Plaintiff on approximately ten occasions. The acts of sexual assault include fondling her breasts, groping her butt, grabbing her vagina, and inserting his finger into her vagina.

3.     On January 26, 2017, Officer Calderon was arraigned in Los Angeles County Superior Court, and charged with two counts of lewd act upon a child, and four counts of assault by a public officer.

4.     This civil rights action seeks compensatory and punitive damages from defendants for violating rights under the United States Constitution in connection with the sexual assault of Plaintiff by Officer Calderon. In sexually abusing the Plaintiff and other victims, Officer Calderon exploited opportunities that were provided by the County's deliberate indifference to the safety of Plaintiff and other victims. Officer Calderon's supervisors and co-workers, together with the County of Los Angeles and the Los Angeles County Probation Department, failed to respect and enforce key policies designed to prevent and deter sexual abuse, failed to train their employees regarding those policies, failed to discipline their employees for violating those policies, maintained vague and unclear policies, and maintained customs and practices that deviated from written policy.

**JURISDICTION AND VENUE**

5.     This case arises under 42 U.S.C. § 1983. Accordingly, subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

6.     Plaintiff's claims arise out of a course of conduct involving officials for the County of Los Angeles, in the County of Los Angeles, State of California, and within this judicial district.

**PARTIES**

7.     Plaintiff Ariana Amore is an adult competent to sue. At all relevant times, Plaintiff was incarcerated at Camp Kenyon Scudder ("Camp Scudder"), a juvenile detention camp located at 128750 Bouquet Cyn. Rd., Santa Clarita, CA 91390.

8.     Defendant County of Los Angeles ("County") is a legal and political entity established under the laws of the State of California, with all of the powers specified and necessarily implied by the Constitution and the laws of the State of California and exercised by various government agents and officers. County is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles County Probation Department and its agents and employees. At all relevant times, County was responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, County was the employer of each of the individually named defendants, and Camp Scudder was a County-run facility.

9.     Defendant Los Angeles County Probation Department ("LACPD") is a public agency. At the times relevant hereto, Defendant Los Angeles County Chief Probation Officer Jerry Powers ("Chief Powers") was the acting Chief Probation Officer for the County of Los Angeles and is sued in both his official and individual capacities. At all relevant times, LACPD and Chief Powers were responsible for ensuring that the actions, omissions, policies, procedures, practices, and customs of its employees and agents complied with the laws of the United States and of the State of California. LACPD was the County agency responsible for operating Camp Scudder.

10.     Defendant Oscar Calderon, Jr. ("Officer Calderon") is a deputy probation officer for the LACPD. At all relevant times, Officer Calderon was a duly authorized employee and agent of the County of Los Angeles, subject to oversight and supervision by the County's elected and non-elected officials, and was acting under color of law and within the course and scope of his duties as a deputy probation officer for the LACPD and with complete authority and ratification of their principal, County. In committing the acts alleged herein, Officer Calderon acted within the scope of his respective employment and under color of law. Officer Calderon is sued in both his official and individual capacities.

11.     Defendant Deputy Probation Officer (first name unknown, hereinafter, "FNU") Ibanez ("Officer Ibanez") is a female deputy probation officer for the LACPD. At all relevant times, Officer Ibanez was a duly authorized employee and agent of the County of Los Angeles, subject to oversight and supervision by the County's elected and non-elected officials, and was acting under color of law and within the course and scope of her duties as a deputy probation officer for the LACPD and with complete authority and ratification of their principal, County. In committing the acts alleged herein, Officer Ibanez acted within the scope of her respective employment and under color of law. Plaintiff does not know Officer Ibanez's first name but will seek leave to amend the complaint should she learn it.  Officer Ibanez is sued in both her official and individual capacities.

12.     Defendant Deputy Probation Officer FNU Gonzalez ("Officer Gonzalez") is a male deputy probation officer for the LACPD. At all relevant times, Officer Gonzalez was a duly authorized employee and agent of the County of Los Angeles, subject to oversight and supervision by the County's elected and non-elected officials, and was acting under color of law and within the course and scope of his duties as a deputy probation officer for the LACPD and with complete authority and ratification of their principal, County. In committing the acts alleged herein, Officer Ibanez acted within the scope of his respective employment and under color of law. Plaintiff does not know Officer Gonzalez's first name but will seek leave to amend the complaint should she learn it.  Officer Gonzalez is sued in both his official and individual capacities.

13.     Defendant Supervising Deputy Probation Officer FNU Coddington ("Supervising Officer Coddington") is a female supervising deputy probation officer for the LACPD. At all relevant times, Officer Calderon was a duly authorized employee and agent of the County of Los Angeles, subject to oversight and supervision by the County's elected and non-elected officials, and was acting under color of law and within the course and scope of his duties as a deputy probation officer for the LACPD

and with complete authority and ratification of their principal, County. In committing the acts alleged herein, Supervising Officer Coddington acted within the scope of her respective employment and under color of law. Plaintiff does not know Supervising Officer Coddington's first name but will seek leave to amend the complaint should she learn it.  Supervising Officer Coddington is sued in both her official and individual capacities.

14.    The true names of defendants Does 1 through 10 are presently unknown to Plaintiff, who therefore sues each of these defendants by such fictitious name; but upon ascertaining the true identity of a defendant Doe, Plaintiff will amend this complaint or seek leave to do so by inserting the true and correct name in lieu of the fictitious name. Plaintiff is informed and believes, and on the basis of such information and belief alleges that each defendant Doe herein is in some manner responsible for the injuries and damages alleged herein. Each individually named Doe defendant, like each individually named defendant, acted under color of law and within the scope of his or her agency and employment with the County and LACPD. Each Doe is sued in both his/her official and individual capacities.

**FACTS PERTINENT TO ALL CAUSES OF ACTION**

15.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 14 of this complaint with the same force and effect as if fully set forth herein.

16.    Plaintiff Ariana Amore was remanded to the custody of the LACPD in reference to *In the Matter of Ariana A., Case No. MJ21440*. Plaintiff was detained at Camp Scudder between November 2014 and July 2015.

17.    During her time at Camp Scudder, Plaintiff was under the direct supervision of Officer Calderon. As a deputy probation officer, Officer Calderon was responsible for the care, safety and control of Plaintiff, and was tasked with performing case management and life-skills assessment activities for Plaintiff. Officer Calderon's responsibilities included preparing court reports that tracked Plaintiff's behavior and progress while at Camp Scudder. Such court reports, whether reflecting negative or

1   positive upon Plaintiff, could influence the court's rulings in *In the Matter of Ariana A.,*
2   *Case No. MJ21440*, including Plaintiff's release date.

3        18.    On at least two occasions, Officer Calderon told Plaintiff that if she
4   refused to obey him, "I will fuck up your court reports."

5        19.    Officer Calderon exercised discretion over Plaintiff in a variety of other
6   ways, including, deciding where Plaintiff worked at Camp Scudder (camp wards are
7   assigned various jobs), what personal items sent by family from outside Camp Scudder
8   (such as shampoo) that Plaintiff could actually receive, and how many phone calls to
9   family she could make.

10       20.    While supervising Plaintiff, Officer Calderon would engage in unwanted
11   flirtatious behavior with her. Some of Officer Calderon's odd, flirtatious behavior
12   towards Plaintiff occurred in front of other LACPD officers. For instance, on multiple
13   occasions, at night, just before the lights were turned off in the camp wards' dormitory
14   for sleep, Officer Calderon would call Plaintiff out of bed and have her sit at a lunch
15   bench in the dormitory with him. Officer Calderon would order Plaintiff to remain
16   seated with him after the lights were turned off. Plaintiff had nothing to say to Officer
17   Calderon and the two would sit in silence, in the dark, until Officer Calderon permitted
18   Plaintiff to return to her bed to sleep. Other LACPD officers, Does 1-10, observed this
19   and never said anything to Officer Calderon and never intervened on Plaintiff's behalf.
20   During these times, LACPD supervising officers remained in their office, or in some
21   other location, and were never present for oversight of Officer Calderon.

22       21.    Officer Calderon engaged in inappropriate public behavior towards
23   Plaintiff on other occasions. In Plaintiff's first couple months at Camp Scudder,
24   Officer Calderon routinely brought her food from outside the facility. This was an odd,
25   uncommon practice. Plaintiff was hungry and accepted the food but did not like the
26   attention it brought to her. Other LACPD officers, including supervising officers, saw
27   Officer Calderon's rare treatment of Plaintiff and joked with her. Comments to
28   Plaintiff included, "you got the juice!" – as if Plaintiff had the privilege of Officer

Calderon's attention, or had influence over him. Plaintiff felt cornered by the attention, and because LACPD officer had joked about the treatment rather than intervene, Plaintiff did not feel comfortable confiding in them that she felt threatened by Officer Calderon.

22.     Officer Calderon combined his odd, flirtatious behavior towards Plaintiff with assertions of his power over her. On some occasions, Plaintiff would complain to Officer Calderon of his unfair treatment of her and critique his behavior. Officer Calderon would respond, "I'm in charge," "I have the fucking power," and "I can do what I want."

23.     Plaintiff wrote her godfather a letter complaining of Officer Calderon's inappropriate behavior towards her, including that he would bring her dinner at night. In response, Plaintiff's godfather contacted Supervising Officer Coddington in person, telling her about Officer Calderon's inappropriate behavior and that he suspected something was not right with Officer Calderon's supervision of Plaintiff. Supervising Officer Coddington told Plaintiff's godfather that she trusted Officer Calderon "100%" and trusted him "like my own son." Plaintiff's godfather told Supervising Officer Coddington that he wanted to make a complaint. Supervising Officer Coddington told Plaintiff's godfather that she was the person to whom he could make complaints. Supervising Officer Coddington did not investigate Officer Calderon after being put on notice of his inappropriate behavior.

24.     While supervising Plaintiff, Officer Calderon also engaged in inappropriate physical behavior with her in private. Examples include placing Plaintiff in a pretend chokehold, pressing his body against hers, and turning her around to kiss her. In addition, during the times that Plaintiff was permitted to make phone calls to her family, Officer Calderon would be seated next to Plaintiff. During these phone calls, Officer Calderon would occasionally "scissor" his legs with Plaintiffs, intertwining his legs in between hers. Once, Officer Calderon elevated his unwanted touching of Plaintiff while she was speaking on the telephone by trailing her fingers with his fingers

and touching her legs in a kind of soft, rubbing motion. With Officer Calderon right next to her, Plaintiff did not feel comfortable reporting to her family over the phone what was happening to her, despite feeling scared and disturbed.

25.     On a later date, and in a private setting, Plaintiff mustered up the courage and told a therapist at Camp Scudder that Officer Calderon had touched her while she was on the phone. Plaintiff did not tell the therapist about the entire pattern of Officer Calderon's behavior. Plaintiff does not remember the therapist's name but recalls her as short, fit, skinny and Hispanic. Much to Plaintiff's chagrin, days after talking to the therapist, Officer Calderon came and pulled Plaintiff out of class. Officer Calderon suspected that Plaintiff had told the therapist of his physical advances and asked her, "what did you tell her?!" Plaintiff was terrified that her secrets were being shared with Officer Calderon. Plaintiff desperately wanted to tell someone about Officer Calderon's treatment of her but figured that if she could not trust her therapist then she could not trust anyone at Camp Scudder. As a result, Plaintiff gave up trying to resist Officer Calderon.

26.     Plaintiff alleges that Officer Calderon suspected her of telling the therapist because the therapist had told LACPD officers and/or supervising officers about Officer Calderon touching Plaintiff while she was on the phone, and the rumor spread amongst LACPD officers. Despite Officer Calderon contacting Plaintiff, no other LACPD officer or staff ever contacted Plaintiff or intervened on her behalf about the incident.

27.     Plaintiff was afraid to report Officer Calderon's treatment of her because she feared retaliation. Plaintiff repeatedly heard Officer Calderon and other LACPD officers actively discourage camp wards from making complaints. During her first few months at Camp Scudder, Plaintiff would complain to LACPD officers about treatment practices that she considered unfair. Officer Calderon, Officer Ibanez, Officer Gonzalez, as well as other LACPD officers, Does 1-10, would say, "don't be a snitch," and "snitches get stitches," and "you don't want a snitch jacket on you," to

dissuade complaints. Officer Calderon, Officer Ibanez, and Officer Gonzalez, as well as other LACPD officers, Does 1-10, would also dissuade complaints by saying, "don't make me have to do more paperwork," and "you're just making more work for me." As a result, Plaintiff was further dissuaded from reaching out to any other LACPD officer to complain about Officer Calderon.

28.    In Camp Scudder's environment of LACPD officers actively discouraging complaints, and without oversight by LACPD supervising officers, Officer Calderon's behavior towards Plaintiff escalated from strange, aggressive, and flirtatious, to outright and repeated sexual abuse.

29.    From around April 2015 through around June 2015 --after Plaintiff had been under Officer Calderon's supervision for around six months – Officer Calderon assigned Plaintiff to work at the snack shop. The snack shop was part of the "Al Jones" rewards points system, whereby camp wards earn treats for good behavior. Plaintiff's job was to distribute chips, candy, and other sweets to her fellow camp wards on the weekly basis when the snack shop was open.

30.    The snack shop was located in a remote part of Camp Scudder, behind the athletic track and away from any other structure. The snack shop was not regularly monitored by any LACPD officer or supervising officer. The snack shop itself was a small enclosed structure with a ledge that opened up, allowing the person inside to distribute treats to anyone assembled outside. The area below the ledge was closed off and unobservable from outside.

31.    During her weekly shift working at the snack shop, Plaintiff stood on her feet, performing her assigned tasks. Meanwhile, Officer Calderon would be seated, obscured from view from outside.

32.    While inside the snack shop, Officer Calderon routinely sexually assaulted Plaintiff. Officer Calderon would kiss Plaintiff's body, he would quickly pull her towards him, and he would grab intimate areas. In particular, Officer Calderon groped Plaintiff's breasts, squeezed Plaintiff's butt, and grabbed Plaintiff's vagina. Officer

Calderon also penetrated Plaintiff's vagina with his finger.

33.    Overall, Officer Calderon sexually abused Plaintiff in the snack shop on around ten occasions in the period from around April 2015 to around June 2015.

34.    On these occasions of sexual abuse inside the snack shop, Plaintiff squirmed away from Officer Calderon but could not get him to stop. Officer Calderon restrained Plaintiff by his physical presence. Officer Calderon is at least 6-feet, 1-inches in height, and weighs at least 250 pounds. Plaintiff is 5-feet, 2-inches, and weighs approximately 120 pounds. The enclosed snack shop --a small space located in a remote area of Camp Scudder – was not visited by any other LACPD officers to whom she could cry for help.

35.    During this time, Officer Calderon would frequently tell Plaintiff that he had a crush on her, and that because she had recently turned 18, it "wouldn't be a problem," because she was "legal." At no time did Plaintiff consent to Officer Calderon touching her.

36.    Plaintiff did not feel safe to complain to LACPD officers and staff after she was victimized by Officer Calderon. Plaintiff did not know how to prevent the weekly sexual abuse. Plaintiff had heard LACPD officers, such as Officers Calderon, Ibanez, and Gonzalez, warn camp wards to not "snitch" and not file complaints against them. Plaintiff worried that if she told other girls at Camp Scudder then she would get in more trouble for snitching.

37.    Plaintiff was further dissuaded from making complaints by Officer Calderon's supervisor, Supervising Officer Coddington. On one occasion, having already been sexually abused by Officer Calderon, Supervising Officer Coddington told Plaintiff, "you're brainwashing Calderon." Plaintiff felt like Supervising Officer Coddington was blaming her for being sexually abused. Other LACPD officers had observed Officer Calderon's aggressive, flirtatious behavior towards her in the dormitory and Supervising Officer Coddington was aware of it, blamed Plaintiff for the unwanted attention, but did nothing to prevent Officer Calderon's abuse.

38.     Supervising Officer Coddington was responsible for ensuring that the actions of her subordinates complied with written policies, did not violate the law, and that each LACBPD officer was properly supervised. At all relevant times, Supervising Officer Coddington never intervened against Officer Calderon on Plaintiff's behalf, either personally or through one of her subordinates, or ensured that he was properly supervised despite multiple public displays of inappropriate behavior towards Plaintiff.

39.     Plaintiff's isolation from any protection by LACPD officer or staff was made worse by the fact that Officer Calderon was still responsible for Plaintiff's court reports and Plaintiff did not want a negative review of her to extend her time at Camp Scudder.

40.     Plaintiff was released from Camp Scudder on July 17, 2015.

41.     On January 25, 2017, Officer Calderon was arrested and charged with six felony counts – 2 counts of lewd acts upon a child and 4 counts of assault under color of authority. Reference is made to *People of the State of California vs. Oscar D. Calderon, Jr.,* LASC Case No. BA453651.

42.     Chief Powers, Supervising Officer Coddington, and other LACPD supervising officers were on notice that Officer Calderon was engaging in conduct in violation of written policy, including policies deterring sexual abuse and impropriety.

43.     Chief Powers, Supervising Officer Coddington, and other LACPD supervising officers failed to act to prevent Officer Calderon from engaging in this conduct. Since the written policies were designed, at least in part, to prevent and deter sexual abuse, Chief Powers, Supervising Officer Coddington, and other LACPD supervising officers knew or reasonably should have known that the failure to enforce these policies heightened the danger of sexual abuse of wards by Officer Calderon.

44.     As a result of Chief Powers, Supervising Officer Coddington, and other LACPD supervising officers' failure to supervise Officer Calderon, prior to the sexual abuse of Plaintiff, Officer Calderon's misconduct and violations of policy were never reported or properly investigated; the internal culture of LACPD officers intimidating

11

camp wards from making complaints by warning against "snitches" was never addressed; public inappropriate behavior by Officer Calderon towards camp wards was never timely investigated; and Officer Calderon was not subject to timely LACPD discipline.

45.    If Officer Calderon had been adequately trained and supervised prior to the sexual abuse of Plaintiff, if his errant behavior had been timely investigated, and if he had been timely punished as a result, then the sexual abuse of Plaintiff in this case could have been averted.

## DAMAGES

46.    As a direct and proximate result of aforesaid acts and omissions, and the customs, practices, policies and decisions of the defendants alleged in this complaint, Plaintiff suffered and will continue to suffer great emotional, mental and physical pain, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused and will continue to cause, Plaintiff to sustain general damages in a sum to be determined at trial.

47.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered the denial of her fundamental constitutional rights guaranteed by the First, Fourth, Eighth and Fourteenth Amendments of the United States Constitution, which have caused Plaintiff to sustain damages in a sum to be determined at trial.

48.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff incurred and will continue to incur medical expenses, including psychological treatment.

49.    As a further direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered past and future losses of income that have caused her to sustain economic damages in a sum to be determined at trial.

12

50.     Officer Calderon, Officer Ibanez, Officer Gonzalez, Supervising Officer Coddington, Chief Powers, and Doe defendants, excluding Defendants County and LACPD, acted in a manner that was willful, wanton, malicious and oppressive, with reckless disregard of or in deliberate indifference to and with the intent to deprive Plaintiff of her constitutional rights, and did in fact violate the aforementioned rights, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial in this matter.

## FIRST CLAIM FOR RELIEF
### Violation of Civil Rights – 42 U.S.C. § 1983
(First Amendment – Against All Defendants)

51.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

52.     At all relevant times, Plaintiff was a ward of the court and incarcerated at Camp Scudder, a juvenile detention facility operated by the County.

53.     The entity defendants, individual defendants, and Doe defendants, while acting under color of law, deprived Plaintiff of her civil rights under the First Amendment by acting and/or allowing each other to act in a threatening or violent manner and otherwise engaging in conduct that inhibited Plaintiff's freedom of speech and right to petition for redress of grievances and to complain about her treatment while in custody, and that such actions undertaken by defendants would chill a person of ordinary firmness from continuing to engage in freedom of speech.

54.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power that shock the conscience. They are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives.

55.     The conduct of entity defendants, individual defendants, and Doe defendants was willful, wanton, malicious, or done with reckless disregard for the rights and safety of Plaintiff.

56.     Plaintiff specifically alleges that Defendants' complained of acts and/or omissions were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injuries complained of herein by Plaintiff.

57.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff suffered extreme and severe mental anguish, and was injured as alleged above, entitling her to recover compensatory and punitive damages (excepts as to the entity defendants) according to proof.

## SECOND CLAIM FOR RELIEF

### Violation of Civil Rights – 42 U.S.C. § 1983

(Fourth Amendment– Against Officer Calderon)

58.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

59.     At all relevant times, Plaintiff was a ward of the court and incarcerated at Camp Scudder, a juvenile detention facility operated by the County.

60.     Defendant Officer Calderon, while acting under color of law, sexually assaulted Plaintiff and engaged in the conduct described above, and thereby deprived Plaintiff of her civil rights under the Fourth Amendment to the United States Constitution.

61.     The force used by Officer Calderon upon Plaintiff while sexually assaulting her in custody was harmful, unwanted, and excessive.

62.     The sexual assaults of Plaintiff by Officer Calderon, and Officer Calderon's conduct as described above, were unreasonable, unjustified, and offensive to human dignity.

63.    The conduct of Officer Calderon was willful, wanton, malicious, or done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

64.    As a result of the conduct of Officer Calderon, Plaintiff was harmed.

65.    Plaintiff specifically alleges that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff.

**THIRD CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. § 1983**

(Eighth Amendment –Against Officer Calderon)

66.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

67.    At all relevant times, Plaintiff was a ward of the court and incarcerated at Camp Scudder, a juvenile detention facility operated by the County.

68.    Defendant Officer Calderon, while acting under color of law, sexually assaulted Plaintiff and engaged in the conduct described above, and thereby deprived Plaintiff of her civil rights under the Eighth Amendment to the United States Constitution.

69.    The force used by Officer Calderon upon Plaintiff while sexually assaulting her in custody was harmful, unwanted, and excessive.

70.    The sexual assaults of Plaintiff by Officer Calderon, and Officer Calderon's conduct as described above, were unreasonable, unjustified, and offensive to human dignity. It was also with deliberate indifference to the rights and safety of Plaintiff.

71.    The conduct of Officer Calderon was willful, wanton, malicious, sadistic, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

15

72.     As a result of the conduct of Officer Calderon, Plaintiff was harmed.

73.     Plaintiff specifically alleges that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff.

### FOURTH CLAIM FOR RELIEF

### Violation of Civil Rights – 42 U.S.C. § 1983

(Fourteenth Amendment –Against Officer Calderon)

74.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

75.     At all relevant times, Plaintiff was a ward of the court and incarcerated at Camp Scudder, a juvenile detention facility operated by the County.

76.     Defendant Officer Calderon, while acting under color of law, sexually assaulted Plaintiff and engaged in the conduct described above, and thereby deprived Plaintiff of her civil rights under the Fourteenth Amendment to the United States Constitution.

77.     The force used by Officer Calderon upon Plaintiff while sexually assaulting her in custody was harmful, unwanted, and excessive.

78.     The sexual assaults of Plaintiff by Officer Calderon, and Officer Calderon's conduct as described above, were unreasonable, unjustified, and offensive to human dignity. It was also with deliberate indifference to the rights and safety of Plaintiff.

79.     The conduct of Officer Calderon was willful, wanton, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

80.     As a result of the conduct of Officer Calderon, Plaintiff was harmed.

81.     Plaintiff specifically alleges that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them,

16

to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff.

## FIFTH CLAIM FOR RELIEF

### Violation Due Process – 42 U.S.C. § 1983

(Fourteenth Amendment –Against Officer Calderon)

82.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

83.    At all relevant times, Plaintiff was a ward of the court and incarcerated at Camp Scudder, a juvenile detention facility operated by the County.

84.    Plaintiff had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a matter as to shock the conscience.

85.    Defendant Officer Calderon, while acting under color of law and within the course and scope of his employment by the County and LACPD, sexually assaulted Plaintiff and engaged in the conduct described above, and thereby deprived Plaintiff of her civil rights under the Fourteenth Amendment to the United States Constitution.

86.    The aforementioned actions of Officer Calderon, along with undiscovered conduct, shock the conscience, in that he acted with deliberate indifference to the constitutional rights of Plaintiff.

87.    The acts of Officer Calderon violated the substantive due process rights of Plaintiff.

88.    The acts or omissions of Officer Calderon caused harm to Plaintiff.

89.    The conduct of Officer Calderon was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages.

90.    Plaintiff specifically alleges that Defendants' complained of acts and/or omissions, were within each of their control, and within the feasibility of each of them, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and

17

injury complained of herein by Plaintiff.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability −Unconstitutional Custom, Practice, or Policy

### 42 U.S.C. § 1983

(Against County, LACPD, and Chief Powers)

91.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

92.    The individual defendants and Doe defendants acted under color of law and within the course and scope of their employment by the County and LACPD.

93.    The individual defendants and Doe defendants deprived Plaintiff of her particular rights under the First Amendment, and Officer Calderon deprived Plaintiff of her Fourth, Eighth, and Fourteenth Amendments, as alleged above.

94.    Plaintiff is informed and believes, and thereon alleges that, at all times herein mentioned, defendants County, LACPD, the relevant policy maker, Chief Powers, and relevant County officials, whether named or unnamed (hereinafter referred to collectively as the entity defendants) maintain or tolerate unconstitutional customs, practices, and policies that facilitated the deprivation of Plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendment, as alleged above.

95.    The policies, customs, and practices described above are also evidenced by the victimization of Plaintiff and other camp wards by Officer Calderon.

96.    Entity defendants had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Said officials acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices and customs with respect to the constitutional rights of Plaintiff and other wards similarly situated.

97.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured and sustained damages as alleged above. Accordingly, Plaintiff seeks compensatory

18

damages from all the entity defendants, and punitive damages from Chief Powers, in his individual capacity only.

## SEVENTH CLAIM FOR RELIEF

### Municipal Liability –Inadequate Training/Policy of Inaction

### 42 U.S.C. § 1983

(Against County, LACPD, and Chief Powers)

98.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

99.    The individual defendants and Doe defendants acted under color of law and within the course and scope of their employment by the County and LACPD.

100.    The individual defendants and Doe defendants deprived Plaintiff of her particular rights under the First Amendment, and Officer Calderon deprived Plaintiff of her Fourth, Eighth, and Fourteenth Amendments, as alleged above.

101.    The training provided by the County, LACPD, and the relevant policy maker, Chief Powers, and relevant County officials, whether named or unnamed (hereinafter referred to collectively as the entity defendants) was not adequate to train their probation officers and staff (including therapists) to handle the usual and recurring situations with which they must deal. As evidenced by the numerous instances of camp wards before Plaintiff, the entity defendants did not adequately train their officers and staff to prevent, deter, detect, and avoid sexual abuse of camp wards – and were on notice of such. Upon the same evidence, the entity defendants were also on notice that they did not adequately train their officers and staff to intervene when other officers are observed to be violating policies designed to prevent and deter sexual abuse of camp wards.

102.    The entity defendants were deliberately indifferent to the obvious consequences of their failure to train their officers and staff adequately.

103.    The failure of the entity defendants to provide adequate training caused the deprivation of Plaintiff's rights.

19

104.   The entity defendants maintained a policy and practice of inaction with respect to the violation of policies designed to prevent or deter sexual abuse of camp wards. LACPD officers who engaged in suspicious behavior, or behavior that violated written policy, were inadequately disciplined or otherwise not penalized in connection with sexual or otherwise inappropriate behavior towards camp wards.

105.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and practice of inaction of the aforementioned defendants, Plaintiff was injured and sustained damages as alleged above. Accordingly, Plaintiff seeks compensatory damages from all the entity defendants, and punitive damages from Chief Powers, in his individual capacity only.

**EIGHTH CLAIM FOR RELIEF**

**Supervisory Liability – 42 U.S.C. § 1983**

(Against Supervising Officer Coddington and Does 1-10)

106.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

107.   Supervising Officer Coddington and Does 1-10 acted in a supervisory capacity under color of law.

108.   The acts and failures of Supervising Officer Coddington and Does 1-10 were a cause of the sexual abuse of Plaintiff and other conduct by Officer Calderon, which deprived Plaintiff of her particular rights under the First, Fourth, Eighth, and Fourteenth Amendments, as alleged above.

109.   The Supervising Officer Coddington and Does 1-10 knew and had been put on notice that their subordinate Officer Calderon was engaging in conduct in violation of written policy and knew or reasonably should have known that his conduct would deprive Plaintiff of these rights.

110.   The Supervising Officer Coddington and Does 1-10 failed to act to prevent Officer Calderon, their subordinate, from engaging in such conduct.

111.   The known or obvious consequence of training deficiencies and the

20

1  failures to enforce written policies would be to cause subordinates like Officer
2  Calderon to violate Plaintiff's constitutional rights;

3      112.   The Supervising Officer Coddington and Does 1-10 disregarded this
4  consequence.

5      113.   These training deficiencies and the failures to enforce written policies
6  resulted in the deprivation of Plaintiff's rights by Officer Calderon.

7      114.   The Supervising Officer Coddington and Does 1-10 engaged in conduct
8  that showed a reckless or callous indifference to the deprivation by their subordinates
9  of the rights of others.

10      115.   The conduct of Supervising Officer Coddington and Does 1-10 was
11  willful, wanton, malicious, or done with reckless disregard for the rights and safety of
12  Plaintiff and therefore warrants the imposition of exemplary and punitive damages as
13  to each of those defendants.

**NINTH CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. §§ 1983, 1988**

**Conspiracy to Violate Civil Rights**

(Against All Individual County Defendants)

18      116.   Plaintiff incorporates by reference each and every allegation contained in
19  the foregoing paragraphs as if re-alleged herein.

20      117.   This cause of action arises under United States Code, Title 42, Sections
21  1983 and 1988, wherein Plaintiffs seeks to redress a deprivation under color of law of a
22  right, privilege or immunity secured to herself by the First, Eighth and Fourteenth
23  Amendments to the United States Constitution.

24      118.   Defendants Officer Calderon, Officer Ibanez, Officer Gonzalez,
25  Supervisor Officer Coddington, Chief Powers, and Does 1-10, and each of them:

26          (a) had a joint and simultaneous duty to make sure that Plaintiff was not
27          sexually assaulted;

28          (b) had joint and simultaneous knowledge that Plaintiff was at risk of

being sexually assaulted by Officer Calderon;

(c) with such duty, knowledge and a meeting of the minds, took action at the same time and in the same place to collaborate to refuse to protect Plaintiff from Officer Calderon's sexual assaults. Thus, forming a 'pact of denial' such that for the months that Plaintiff was subject to Officer Calderon's sexual assaults – after the individual defendants had been alerted to the danger Officer Calderon posed to Plaintiff – not a single one of them did anything to intervene on Plaintiff's behalf or prevent the sexual assaults of Plaintiff;

(d) acted as described herein above, in conspiracy with, and with the agreement permission, ratification, and approval of, each other to violate Plaintiff's civil rights as stated herein.

119.   As a direct and proximate result of the aforementioned acts, omissions and deliberate indifference of each of the defendants, Plaintiff was harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows against defendants:

1.   General and compensatory damages in an amount according to proof;

2.   Special damages in an amount according to proof;

3.   Exemplary and punitive damages against each individual and Doe defendant, but not against the County or LACPD, in amounts according to proof;

4.   Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and

//
//
//
//
//2

1        5.      Such other relief as may be warranted or as is just and proper.

2

                                      **LAW OFFICES OF ERIN DARLING**

3    DATED:  July 14, 2017

4

5                                    By:    /s/ Erin Darling
                                            Erin Darling

6                                                Attorney for Plaintiff,

7                                                ARIANA AMORE

8

9                                     **LAW OFFICES OF JUSTIN STERLING**

    DATED:  July 14, 2017

10

11                                   By:    /s/ Justin Sterling
                                            Justin Sterling

12                                               Attorney for Plaintiff,

13                                               ARIANA AMORE

14

15                                        **JURY DEMAND**

16       Plaintiff hereby demands trial by jury on all issues so triable.

17

                                        **LAW OFFICES OF ERIN DARLING**

18   DATED:  July 14, 2017

19

20                                   By:    /s/ Erin Darling
                                            Erin Darling

21                                               Attorney for Plaintiff, ARIANA AMORE

22

23                                    **LAW OFFICES OF JUSTIN STERLING**

24   DATED:  July 14, 2017

25

26                                   By:    /s/ Justin Sterling
                                            Justin Sterling

27                                               Attorney for Plaintiff, ARIANA AMORE

28